DETERMINED IN

# THE SUPREME COURT

OF THE

## STATE OF WYOMING

[APRIL TERM, 1923]

### CLOSSON v. CLOSSON
(No. 1047; May 29, 1923; 215 Pac. 485)

DIVORCE—HOMESTEAD—JURISDICTION OF PROPERTY OF PARTIES IN DI-
VORCE ACTION—SERVICE BY PUBLICATION—JUDGMENT—COLLATERAL
ATTACK—CONSTITUTIONAL LAW—PROCESS OF LAW.

1.  In a divorce action against a non-resident served by pub-
    lication, a default decree granting plaintiff a divorce and
    homestead property occupied by her, is not subject to
    collateral attack for failure of affidavit or published
    notice to refer to the property.
2.  Comp. St. 1920, Sec. 5000, authorizing a just and equitable
    disposition of the property of parties in divorce actions
    includes homestead property.
3.  Where jurisdiction of a non-resident defendant in a divorce
    action has been obtained by publication of notice, the
    court has power to dispose of homestead property in
    plaintiff's possession within the state, without violating
    the due process of law clause in either the state or Fed-
    eral constitution.
4.  A valid personal judgment for money cannot be rendered
    against a non-resident who has not been served with
    process within the state and has not appeared in the
    action.

5.  Though a purely personal judgment against a non-resident
    is void, where the property sought to be subjected to
    alimony is seized within the state at the commencement
    of the action, the judgment is valid as a charge against
    the property seized.

6.  Where a homestead within the state was in the possession
    of the wife, who sued her non-resident husband for
    divorce and obtained service by publication, the court
    obtained jurisdiction to dispose of the homestead with-
    out any seizure by the possession, and hence the decree
    giving the homestead to the wife could not be attacked
    in a subsequent collateral proceeding by the husband for
    the possession of the land.

APPEAL from District Court, Campbell County; HON. H.
P. ILSLEY, Judge.

Action by Orville LeRoy Closson against Clara Closson
to recover possession of real property set over to defendant
in a former action of divorce between the parties. There
was judgment for plaintiff and defendant appeals.

*Raymond La Fleiche* and *Kem, and W. K. Somers* for ap-
pellant.

Respondent did not seek relief under Section 5924 C. S.;
the decree could not be attacked collaterally. (Newmans
v. Cinti. 18 O. S. 329; Farran v. Robinson, 17 O. S. 252;
Lancaster v. Wilson, 27 Grat. 624; Hendrick v. Whitte-
more, 105 Mass. 23; Campbell v. Jones, 12 S. W. 1017;
Crawford v. McDonald, 33.S. W. 328; Friedman v. Shamb-
lin, 23 So. 823; Hughes v. Cummings, 2 Pac. 290; Ruppin
v. McLachlan, 98 N. W. 156; Wood v. Mobile, 99 Fed. 615;
Ferguson v. Yard, 30 Atl. 517; Morgan v. Zenor, 55 N. W.
197; Hurlbett v. Thomas, 55 Conn. 181.) To subject a
judgment to collateral attack, absence of jurisdiction must
appear on the record (Bambutger v. Green, 146 Ky. 258,
143 S. W. 384; Moore Rlty. Co. v. Karr, 61 Ore. 34, 120
Pac. 742.) A mere allegation of no legal notice is not suf-
ficient; (Bank v. Ault, 1 N. E. 565.) A finding of service
by publication is a finding of jurisdiction; an admission
of jurisdiction to grant divorce will not permit a collateral
attack on. decrees which also disposes of property of the

parties, the record otherwise showing jurisdiction of the court. Black on Judgments 2nd Ed. Vol. 1, Sec. 273, Callen v. Ellison, 13 O. S. 455; Sec. 5000 C. S. authorizes a disposition of property of parties as an incident of a decree of divorce; Pennoyer v. Neff, 95 U. S. 714 cited by plaintiff is not in point, that case involving jurisdiction of a nonresident in an action for a money judgment without attachment or personal service; a different rule obtains in divorce actions in view of the Wyoming Statutes; service upon nonresidents by publication is authorized in divorce actions; property rights may be decreed. (Twing v. O'Meara, (Ia.) 13 N. W. 391,) and such decrees are not subject to collateral attack. It is not necessary to describe the property in the published notice, (Rogers v. Rogers (Kans.) 143 Pac. 409; Blankington v. Blankington, 5 N. E. 823,) while a mere judgment for alimony can not be rendered upon constructive service, property within the jurisdiction of the court may be decreed, (Benner v. Benner, 58 N. E. 571) the land involved is the hometsead of the parties, occupied by the wife as a homestead at the time it was granted to her in the decree of divorce against her husband on grounds of desertion. The judgment of the trial court should be reversed.

*Schrader & Lewis* and *Elwood Anderson* for respondent.

The decree granting defendant a divorce was not an action wherein service was had by publication only; neither the affidavit for publication nor the published notice referred to or described property; no proceedings for attachment, injunction, receivership or otherwise was had to acquire possession of the lands nor a seizure thereof on behalf of plaintiff in the divorce action. That portion of the divorce decree undertaking to set over lands to the plaintiff was without jurisdiction, and contrary to Art. XIV of the Constitution of the United States, and of Art. I, Sec. 6 of the Wyoming Constitution prohibiting the taking of property without due process of law; service by publication under Sec. 5636 C. S. may be had in suits for divorce and Secs.

5638-5639 require an affidavit as to facts of nonresidence and the notice to contain a summary statement of the object and prayer of the petition; it is admitted that the service in this case was sufficient to give jurisdiction to render the divorce, but insufficient to confer jurisdiction to decree property rights; the judgment being void may be attacked collaterally as to the portion thereof granting the homestead to plaintiff; the notice did not state the object and prayer of the petition to be, with reference to property of the parties as required by statute. (21 Ruling Case Law 1294, Sec. 37 as to affidavit, and 1297 Section 40 as to notice; Barlow v. Young, (Okla.) 103 Pac. 623, a leading case both as to the affidavit and notice, and the question of collateral attack, Hartzen v. Virgen, (N. D.) 69 N. W. 203; Garrett v. Struble, (Kan.) 46 Pac. 943; Harrison v. Cloflin, (Kan.) 13 Pac. 830; McGavack v. Pollack, 13 Neb. 535; Attkins v. Attkins, 9 Neb. 191; Frazier v. Miles, 10 Neb. 113; Carson v. Schoemaker, 55 Minn. 386; Westcott v. Archer, 12 Neb. 345; Cohen v. Trowbridge, 6 Kans. 385; Cockley v. Smith, (Kan.) 17 Pac. 156.) The proceedings did not constitute due process of law, the court being without jurisdiction. (21 Ruling Case Law 1295; 1 Ruling Case Law 886 Sec. 26; Pennoyer v. Neff, 95 U. S. 714, 24 L. ed. 565; Pennington v. Bank, 243 U. S. 269, 61 L. ed. 713; Cooper v. Reynolds, 77 U. S. 308, 19 L. ed. 931; Conklins Admiralty Law 150-151; Benedict's Admiralty Law 434-435; Hartsel v. Virgin (N. D.) 69 N. W. 203; Murray v. Murray, 115 Cal. 266, 47 Pac. 37; Wesner v. O'Brien, (Kan.) 44 Pac. 1090; Brenner v. Brenner, 63 O. St. 220, 58 N. E. 569; Regney v. Regney, 127 N. Y. 408; Bunnell v. Bunnell, 25 Fed. 214.) According to the better view the mere fact that property belonging to the husband is to be found within the state, is not sufficient, unless it be subjected to the court's jurisdiction by attachment or otherwise, Pennoyer v. Neff supra, the case of Wessner v. O'Brien supra was a divorce action in which reference to property was omitted from the published notice. A divorce

action though not strictly a proceeding *in rem,* is of that nature insofar as it effects the marital status of the plaintiff; as to alimony and costs, it is a proceeding *in personam.* (Regney v. Regney, supra; People v. Baker, 76 N. Y. 78; 2 Bish. Mar. Div. and Sep. Sec. 23.) A judgment which awards, (1) a divorce; (2) alimony; (3) costs, while valid as to the marital status of plaintiff, does not bind defendant where recovered against a nonresident husband, who has not appeared nor been served in the state in which the action is brought. (Beard v. Beard, 21 Ind. 321; Lytle v. Lytle, 48 Id. 200; Midderworth v. McDowell, 49 Id. 386; Prosser v. Warner, 47 Vt. 667; Harding v. Alden, 9 Me. 140; Garner v. Garner, 56 Md. 127; Van Storch v. Griffin, 71 Pa. St. 240; People v. Baker, 76 N. E. 78, 87; Van Voorhis v. Brentnall, 86 Id. 18; De Meli v. De Meli, 120 Cooley on Con. Lim. 405; 2 Black on Judg. Sec. 933; Freem on Judg. Secs. 584, 586; Brown on Jurisdiction, 556, 557, 558, *et seq.*)

*W. K. Somers, Raymond LaFleiche* and *Kem* in reply.

Each state has jurisdiction over the property of its citizens; states may prescribe requirements of jurisdiction and make service by publication as good as any other kind of service. Wesner v. O'Brien, 44 Pac. 1090; Sec. 4999-5002 C. S. relating to divorce and property rights are intended for the protection of the family; had the legislature intended that special process for the seizure of property should issue in divorce actions, it would have so provided; we concede that a judgment for money only, cannot be obtained upon constructive service. The judgment here is against property within the jurisdiction of the court, over which no foreign court can ever acquire jurisdiction; our statutes authorize judgments of this class. Iowa has a similar statute, Rea v. Rea, 98 N. W. 787; Pennington v. Bank, 243 U. S. 269, cited by respondent is not in point; the court there had to do with personal property and a money judgment, and a similar distinction may be noted in Brenner v. Brenner, 58 N. E. 569, also cited by respondent; the statute of Arizona regarding the disposition of property

in divorce actions is similar to our own; in the case of Le-
Barron v. LeBarron, 205 Pac. 910, an attack was made up-
on a divorce decree only insofar as it affected property
rights, the court *held* that the decree could not be attacked.

KIMBALL, Justice.

Orville L. Closson, respondent here and plaintiff below,
brought this action in the District Court of Campbell Coun-
ty, Wyoming, against Clara F. Closson, appellant here and ·
defendant below, to recover the possession of a tract of land
consisting of 163.47 acres in that county. The parties were
formerly husband and wife. The defendant denied the
plaintiff's title and right to possession, and by cross-petition
in the nature of a petition to quiet title, alleged that she
was the owner and in lawful possession of the land by vir-
tue of a decree of the same court in an action for divorce
wherein she was granted a divorce and the land in question
was set over to her. By his answer to the cross-petition
the plaintiff admitted · the rendition of the decree in the
divorce action, but alleged that so much thereof as was de-
signed' to set over to defendant the land in question was
void for want of jurisdiction. Upon the issue thus raised
the trial court found for plaintiff and from a judgment in
his favor the defendant appeals.

The parties were married in South Dakota in 1902. In
1907, under the Homestead Act of May 20, 1862, the hus-
band made entry of the land in dispute. Final proof was
made in September 1914, and patent was issued to him
April 7, 1919. Wyoming was the domicile of matrimony
of the parties, and this land their home, when, in Septem-
ber, 1918, the husband deserted the wife. Since their sepa-
ration, the wife has continued to occupy the land as her
home, and the husband has resided in South Dakota. Such
was the situation of the parties in March, 1920, when the
wife commenced her action for divorce. Her petition in
that action, in addition to the allegations in support of the
application for a divorce on the ground of desertion, alleged
that the only property in Wyoming which the husband

owned or in which he had any interest was 163.47 acres of land upon which she (the wife) then and for the past eleven years had resided; that said land had been entered and patented under the homestead laws of the United States, and that the improvements thereon were the results of her labor and expenditures. The prayer was "that she have an absolute divorce from defendant, and that the real property herein mentioned be set over to her, and such other and further order or orders be made as may be meet in the premises."

. After the filing of an affidavit for service by publication, service was had in that manner. The husband alleges that he had no actual notice of the divorce action during its pendency, but the sufficiency of the service to give the court jurisdiction to grant a divorce is not questioned. The point is made that neither the affidavit for service by publication, nor the published notice, recited anything with reference to the disposition of the homestead. The affidavit stated that the action was for divorce, one of the actions mentioned in the 9th subdivision of Section 4366, C. S. 1910 (§ 5636, C. S. 1920), and the published notice recited that the object and prayer of the petition was "for an absolute divorce from you (the husband) on the grounds of abandonment and desertion for a period of more than one year next prior to the date of filing her (the wife's) said petition, and as more fully appears from her petition now on file in said court."

The husband did not appear in any way in the divorce action, and on August 4, 1920, the case was heard, and the court made a decree which recites that service had been had upon the defendant husband by publication as by law required; that he had failed to file any answer, demurrer or other pleading; that on being called in open court he failed to appear at the trial, and that evidence having been adduced in support of the petition; the court found that plaintiff was entitled to a divorce, and it was so decreed. It was further decreed that the "real property, situated in

the County of Campbell and State of Wyoming be, and the same is hereby set over to the above named plaintiff, Clara F. Closson,'' followed by a correct description of the land in question, ''containing 163.47 acres.'' It is conceded that the land described in the decree was the land occupied by the wife and the same land referred to in her petition for divorce.

As already indicated, the husband, as plaintiff in the present action, admitted the validity of this decree in so far as it granted the divorce, but denied the jurisdiction of the court to grant further relief by setting over the property in question to the divorced wife. This being a collateral attack, the question so raised was whether the challenged portion of the decree was valid until set aside.

Before discussing the statutory authority of courts having jurisdiction to grant divorces in this state, we may observe, generally, that marriage, though considered a civil contract, is also something more. From the contract springs a relation or status in which the state and the public are interested, and which has always been deemed subject to the control of the legislature by laws which may, among other things, prescribe the effect of the relation upon the property rights of the contracting parties. Maynard v. Hill, 125 U. S. 190, 8 Sup. Ct. 723, 31 L. ed. 654. At common law, including the law as administered in the ecclesiastical courts of England, total divorces were not granted except on grounds which rendered the marriage void *ab initio,* and prior to 1858 a valid marriage could not be dissolved in that country except by act of parliament. 1 Blackstone Com., 440. Alimony was an incident to divorce from bed and board, or separation, and was granted to enforce the duty of support owed by the husband to the wife. Davis v. Davis, 134 Ga. 804; 68 S. E. 594, 30 L. R. A. (N. S.) 73, 20 Ann. Cas. 20; Lemp v. Lemp, 249 Mo. 295, 155 S. W. 1057, Ann. Cas. 1914 D. 307. So, it is apparent that our laws with reference to the division of property or the awarding of alimony upon the dissolution of a valid

marriage have little basis on English precedents or common law principles, and are peculiarly dependent on local statute law.

In this state a divorce from the bonds of matrimony may be decreed by the District Court for many causes which do not affect the validity of the marriage. Sec. 4990, C. S. 1920. The action is commenced by petition of the aggrieved party, and is conducted in the same manner as civil actions. Sec. 4995. However, the interest of the state in the proceeding is evidenced by several provisions which have no application to any other civil actions, such as Section 4992, to prevent collusion, and Section 5013, providing that no decree shall be made solely on the declarations, confessions or admissions of the parties. A defendant's default or failure to answer admits no facts material either to the right of divorce or to its incidents. Hughes v. Kepley, 60 Kans. 859, 58 Pac. 556. The court is authorized to make orders for the care and custody of the children and for the payment of alimony pending the action (§§ 4997-4998), and it is further provided (Sec. 4999) that:

"The court, in granting a divorce  *  *  *  may make such disposition of, and provision for, the children as shall appear most expedient under all the circumstances, *  *  *."

And by Section 5000, that:

"In granting a divorce, the court shall also make such disposition of the property of the parties, as shall appear just and equitable, having regard to the respective merits of the parties and to the condition in which they will be left by such divorce, and to the party through whom the property was acquired, and to the burdens imposed upon it, for the benefit of the wife and children, and the court may also decree to the wife reasonable alimony out of the estate of the husband having regard for his ability, and to effectuate the purposes aforesaid, may order so much of his

real estate or the rents and profits thereof, as is necessary to be assigned and set out to the wife for life, or may decree a specific sum to be paid by him to her, and use all necessary legal and equitable processes to carry out its decree into effect.''

By sub-division 9 of Section 5636, supra, it is provided that service by publication may be had:

''In suits for divorce, for alimony,  *  *  *  when the defendant is a non-resident of the state or conceals himself or herself, in order to avoid service of process.''

By Section 5638 it is provided that before service by publication can be made an affidavit must be filed showing that service of summons cannot be made within this state, and that the case is one of those mentioned in Section 5636.

By Section 5639 it is provided that the published notice, shall contain, among other things, ''a summary statement of the object and prayer of the petition.''

Chapter 370, C. S. 1920, makes liberal provision for the vacation and modification of judgments obtained on irregular proceedings or by fraud, and under Section 5924 of that chapter, a defendant served by publication who has had no actual notice during the pendency of the action shall be let to defend almost as a matter of course at any time within three years after judgment.

We shall first inquire whether the challenged part of the decree in the divorce action was void because the published notice failed to state that the court would be asked to make a disposition of property. That part of the decree was evidently rendered, not for the purpose of allowing alimony, but as a disposition of property pursuant to the first part of Section 5000. No more than a reading of the statutes is required to show that they contemplate that, at the time of divorce, the court shall adjust various rights of the parties springing out of the marital relation then dissolved. To this end the court is given authority to dispose of their

property, provide for the custody of their children, and for the maintenance of the wife and children. The authority is given for the regulation of a status, and the statutes do not seem to contemplate a jurisdiction for the purpose of granting a divorce and a want of jurisdiction for other purposes deemed by the legislature necessary to a complete regulation of the status. Blackinton v. Blackinton, 141 Mass. 432, 5 N. E. 830, 55 Am. Rep. 484. The apparent theory of the statute that the right to settle questions concerning the property and children of the parties is an incident of the jurisdiction of the divorce action seems fully to be borne out by the authorities.

In McEwen v. McEwen, 26 Ia. 375, the plaintiff in her petition prayed for divorce and alimony, and though the notice to the defendant contained no statement of the claim for alimony, and the decree was by default, it was held that the judgment for alimony was valid, even as against a direct attack, the court, among other things, saying:

"It appears, that the power of the court in an action for divorce, to set apart as alimony a portion of the property of the husband for the use of the wife, or to direct the payment to her, for her maintenance, a certain sum, and to render judgment therefor, is an incident of the power to decree the divorce of the parties and is to be exercised where prayed for by the wife and required by the ends of justice. Such relief is necessary and must be allowed in order that a just and equitable decree divorcing the parties may be rendered. It may be a certain fixed sum, or a yearly allowance, or a part of the property, real or personal, of the husband set apart to the wife. * * * The notice is sufficient to confer upon the District Court jurisdiction of the subject-matter of the action—the divorce of the parties, and the power to allow alimony being an incident only of the power to divorce, the court had full jurisdiction, and the judgment is therefore valid."

This decision was approved in Zuver v. Zuver, 36 Ia. 190, in Twing v. O'Meara, *infra*, and in other Iowa cases.

In Minnesota, the statute authorizes the court to decree alimony to the wife "upon a divorce for any cause except that of adultery committed by the wife," and it has been held there that the court has jurisdiction to determine the question of alimony although the complaint made no reference thereto and the defendant failed to answer (Sprague v. Sprague, 73 Minn. 474, 74 N. W. 268, 42 L. R. A. 419, 72 Am. S. R. 636); and that a section of the code which provides that the relief granted against a defendant who does not answer shall not exceed that demanded in the complaint is not applicable to divorce actions. Ecker v. Ecker, 130 Minn. 472, 153 N. W. 864 and O'Neil v. O'Neil, 148 Minn. 381, 182 N. W. 438.

In Massachusetts, where a statute provides that "Upon a divorce, or upon petition at any time after a divorce, the Superior Court may decree alimony to the wife," etc., it was said, in Parker v. Parker, 211 Mass. 139, 97 N. E. 988, that "This language in unequivocal terms authorizes the granting of alimony, although none was asked for in the original libel."

In Miller v. Miller, 210 Ill. App. 67, it was held that a decree awarding alimony was properly entered, notwithstanding no such relief was sought by the bill, the statute providing that when a divorce is decreed the court may make such order touching alimony and maintenance of the wife as may be fit, reasonable and just.

In the early case of Fischli v. Fischli, 1 Blackf. (Ind.) 360, 365, 12 Am. Dec. 251, it was said to be the general rule that the granting of alimony to the wife out of the husband's property is not an original but an incidental matter. See, also, Walker v. Walker, 150 Ind. 317, 50 N. E. 68.

In the case of In re Austin's Estate, 173 Mich. 47, 54, 138 N. W. 237, Ann. Cas. 1914 D. 749, it was held under a statute, there quoted, that the court could make an allowance for support of the children in a divorce proceeding,

even though the pleadings contained nothing with reference to the subject.

In Hegwood v. Hegwood, 133 Ark. 160, 202 S. W. 35, it was said that the statute of that state makes the division of property a mere incident of the divorce suit, and it is not essential to the jurisdiction of the court that the pleadings set forth the property.

In Haven v. Trammell, 79 Okla. 309, 193 Pac. 631, it was held that under the Oklahoma statute alimony is a mere incident to divorce, and that in granting a divorce alimony may be awarded though not prayed for in the original pleadings.

In Lynde v. Lynde, 162 N. Y. 405; 56 N. E. 979, 48 L. R. A. 679, 76 Am. S. Rep. 332, it was said: ''The demand for alimony in a divorce suit is not an essential part of the cause of action, but merely incidental to the action and the judgment.''

In Nebraska, where the statute provides that the court upon granting a divorce may decree to the wife a part of the personal estate of the husband, it has been held that authority to grant a divorce carries with it authority to adjust the property rights of the parties with respect to personal property. Hays v. Hays, 75 Nebr. 728, 106 N. W. 773; Maxwell v. Maxwell, 106 Nebr. 689, 184 N. W. 227.

In Lessig v. Lessig, 136 Wis. 403, 117 N. W. 792, referring to the earlier case of Hoh v. Hoh, 84 Wis. 378, 54 N. W. 731, it was said:

''That was a case where the wife brought action and prayed only for allowance of alimony, and it was held that, upon default, a judgment for division of the husband's property could not be sustained because it was not demanded in the complaint. The sweeping provisions of Section 2364, St. 1898, which provide that either alimony or division of the property may be adjudged upon every divorce from the bond of matrimony except when granted for adultery of the wife, were not mentioned or considered.

Whether that decision would be adhered to in view of the further fact that the public interest in the support of the wife after divorce is always involved may be doubtful, * * *."

In Goore v. Goore, 24 Wash. 139, 63 Pac. 1092, the attack on the divorce decree was direct, and, under statutes quite similar to those of Wyoming, it was said that the disposition of the property is a mere incident to the divorce, and service by publication was upheld where neither the affidavit for such service, nor the published notice, described the property.

It is perhaps needless to add that the power of the court to provide for the custody of the children is incidental to the principal subject matter of the controversy. In re Austin's Estate, supra; Snover v. Snover, 10 N. J. Eq. 261; Wells v. Wells, 11 App. D. C. 392; Thomas v. Thomas, 250 Ill. 354; 95 N. E. 345, 35 L. R. A. (N. S.) 1158, Ann. Cas. 1912 B 344; Dubois v. Johnson, 96 Ind. 6.

It is clear, therefore, that the legislature may by statute make the disposition of property within the jurisdiction of the court an incident of a divorce action. It is clear, also, that our statute does this by unequivocal language. It is elementary that if a court has power over the principal matter it has power also over its incidents. It follows, as shown by the foregoing authorities, that under the statute the court's jurisdiction in such a case to dispose of property is not lacking merely because the petition contains no reference thereto. The jurisdiction attaches pursuant to the statute. In this case the petition for divorce did refer to the property and pray for its disposition; but if these allegations were not necessary to an acquisition of jurisdiction to dispose of the property, we cannot see how the failure of the published notice to refer to them can be considered such a defect as would render the appropriate decree void on a collateral attack.

We may add that it would seem that such a notice, in view of the clear and positive provisions of Section 5000,

supra, would be in practice a sufficient warning. This statute was in force when the husband was domiciled here with his wife and acquired the property. He must be deemed to have known the law and to have held his property sub·ject to it. Ownbey v. Morgan, 256 U. S. 94, 111; 41 Sup. Ct. 433, 65 L. ed 837, 17 A. L. R. 873; Herbert v. Bicknell, 233 U. S. 70, 74, 34 Sup. Ct. 562, 58 L. ed 854. And if, thereafter, having given cause for divorce and become a non-resident, he received notice that a petition for divorce had been filed, the law itself carried to him notice that in granting the divorce the court might also decree incidental relief consistent with the established mode of administering justice in the jurisdiction where the wife resided in occupancy of the property.

The occupancy of the land by the wife should not be passed without further notice. In this state, dower being abolished, the only substantial interest a wife has in the husband's real estate is the right of homestead. Every householder, being the head of a family, is entitled to a homestead (C. S. § 6028), which is exempt while occupied as such by the person entitled thereto or his or her family (§ 6029.). This right is something more than a mere exemption. The homestead may not be alienated without the joint consent of husband and wife, when that relation exists. (Const. Art. XIX), and on the death of the person seized of it, it passes to the surviving wife or husband, or minor children (§§ 6030, 6881.). It seems to be conceded that the land in controversy was the homestead of the parties, and that the wife maintained the right by continuing to occupy the land after she was deserted by the husband, and until the decree of divorce. Our statutes contain no specific provision for the disposition of the homestead on divorce, and it must therefore be regulated by the general provisions of Section 5000, above quoted. In the divorce action, if the court had decreed a divorce without any disposition of the homestead, it will be granted that the husband, having the legal title to the land, would have then

taken it free from any claim of the divorced wife, and consequently, as an incident of the divorce, she would have lost her right of homestead. In other words, it was not possible for the court to render a decree of divorce without incidentally affecting the previously existing rights of the parties in the homestead property, and when, in the later collateral action for possession of the land, the disposition of the homestead in the former action is disregarded, and the divorce undisturbed, the result is that the delinquent husband emerges from the litigation with an advantage gained as an incident to the divorce. He is thus permitted to obtain an independent judgment which destroys the effect of a part of the former decree by relying on the other part that terminates the wife's right in the property. This suggests a question of estoppel, or the right to attack a part of a decree, but as we do not care to dispose of the case on this ground, we pass the point without further discussion. (See LeBaron v. LeBaron, 23 Ariz. 560, 205 Pac. 910, and cases there cited.) The confusion and probable mischief which would thus ensue from the result we have described show the importance of adhering in this case to the general rule that in the absence of fraud no question can be collaterally entertained as to anything lying within the jurisdictional sphere of the original case. Cornett v. Williams, 20 Wall. 226, 249; 22 L. ed 254; Laing v. Rigney, 160 U. S. 531; 16 Sup. Ct. 366, 40 L. ed 525; Phelps v. Mutual Reserve Fund L. Assoc., 112 Fed. 453, 50 C. C. A. 339, 61 L. R. A. 717, affirmed 190 U. S. 147; 23 Sup. Ct. 707, 47 L. ed 987; Wells v. Wells, 209 Mass. 282; 95 N. E. 845, 35 L. R. A. (N. S.) 561; Browne on Jurisdiction, §§ 26, 26a, 26b.

Our conclusion that the published notice, sufficient to give the court jurisdiction of the divorce action, was sufficient also, as against collateral attack, to authorize the disposition of the homestead property in the possession of the wife, does not, we think, result in a violation of the "due process of law" clauses of either the state or federal constitution. Where the defendant is not a resident of the state

the power of a state court over the incidents of a cause of
action is subject to limitations. The rule is that a valid
personal judgment for money cannot be rendered against
a nonresident who has not been served with process within
the state and has not appeared in the action. Pennoyer v.
Neff, 95 U. S. 714, 24 L. ed 565. The invalidity of a judg-
ment in such a case does not follow from the mode of serv-
ice, but from the fact that the defendant is not personally
in the state and cannot by any means be required to appear
in its courts. 1 Freeman on Judg., Sec. 127. It is con-
ceded that the rule renders void a purely personal judgment
for alimony against such a defendant. Haddock v. Had-
dock, 201 U. S. 562; 26 Sup. Ct. 525, 50 L. ed 867; 5 Ann.
Cas. 1; notes to 9 L. R. A. (N. S.) 593 and L. R. A. 1917 F,
1161. However, where property sought to be subjected to
a claim for alimony is seized within the state at the com-
mencement of the proceedings the judgment will be valid
to the same extent as in the ordinary action by a general
creditor, not as a judgment *in personam,* but as a charge to
be satisfied out of the property seized. Pennington v. Bank,
243 U. S. 269; 37 Sup. Ct. 282; 61 L. ed 713, L. R. A. 1917
F, 1159.

The defendant in error contends that these principles
control the case at bar and, as his property was not seized
by any process at the commencement of the divorce action,
the court was without jurisdiction to enter any decree ex-
cept for divorce. We think the contention cannot be sus-
tained. It seems, in the first place, to be based on the
premise that the wife was seeking in the divorce action to
enforce a personal claim for alimony. This, as we have
seen, is not the fact, as she sought nothing by way of ali-
mony or maintenance, but asked only that the court set over
to her property to which we must in this case assume she
had a clear equitable right under the statute. This was all,
besides the divorce, that was given her by the decree. We
think, therefore, that those cases where a personal judg-
ment for alimony was sought and it was held that the seiz-

ure of property of the defendant in the state was the basis of the court's jurisdiction to award it are not in point.

It seems clear that a seizure by process of property already in possession of plaintiff and which could not be conveyed without her consent would have been a mere form, if not an anomaly. Pennoyer v. Neff, supra, a leading case laying down the rule to control in suits by general creditors against nonresidents, has not been applied to a situation similar to the one at hand. The opinion in that case expressly recognized the authority of a state court to determine the status of one of its citizens toward a nonresident, and to prescribe .the conditions on which proceedings affecting that status might be commenced and carried on, and it was said that a defendant in such a case may be considered to have consented to service by publication. It recognized, also, the jurisdiction of state courts over property in the state, where the right to that property is involved, without any condition of preliminary seizure.

In Huling v. Kaw Valley Railway, 130 U. S. 559, 563, 9 Sup. Ct. 603, 605; 32 L. ed 1045, it was said:

"The owner of real estate, who is a nonresident of the state within which the property lies, cannot evade the duties and obligations which the law imposes upon him in regard to such property, by his absence from the state. Because he cannot be reached by some process of the courts of the state, which, of course, have no efficacy beyond their own borders, he cannot therefore hold his property exempt from the liabilities, duties and obligations which the state has a right to impose upon such property; and in such cases some substituted form of notice has always been held to be a sufficient warning to the owner, of the proceedings which are being taken under the authority of the state to .subject his property to those demands and obligations."

In Arndt v. Griggs, 134 U. S. 316, 10 Sup. Ct. 557, 33 L. ed 918, which had to do with the validity of a decree quieting title in an action against a nonresident, served by

publication, it was contended that the action being one *in personam*, the person of the defendant was not brought into court by publication alone, and, therefore, the decree was void. In answer to this contention the court said, among other things (134 U. S. 320.) 10 Sup. Ct. 558, 33 L. ed 918:

"The question is not what a court of equity, by virtue of its general powers and in the absence of a statute, might do, but it is, what jurisdiction has a state over titles to real estate within its limits, and what jurisdiction may it give by statute to its own courts, to determine the validity and extent of the claims of non-residents to such real estate? * * * It has control over property within its limits; and the condition of ownership of real estate therein, whether the owner be stranger or citizen, is subjection to its rules concerning the holding, the transfer, liability to obligations, private or public, and the modes of establishing titles thereto."

The court then quoted with approval from Dillen v. Heller, 39 Kans. 599, 18 Pac. 693, where Mr. Justice Valentine discussed at some length the power of the state of Kansas to control property therein belonging to nonresidents, with the conclusion that "the mode of obtaining this jurisdiction may be prescribed wholly, entirely and exclusively by the statutes of Kansas," and that "To obtain jurisdiction of everything within the State of Kansas, the statutes of Kansas may make service by publication as good as any other kind of service."

In Dillen v. Heller it was also contended that a seizure of property of the nonresident was necessary, and the court said (39 Kans. 604) 18 Pac. 696:

"In the present case the plaintiff resides within the state of Kansas, and he virtually surrendered jurisdiction of himself to the court below when he commenced this action. He is in the actual possession of the property in controversy, and, being in the actual possession thereof, he also

in effect surrendered jurisdiction thereof to the court when he brought this action, and as much jurisdiction as any court in any action could obtain by virtue of a seizure of the property by its own officers.''

See, also, Amparo Mining Co. v. Fidelity Trust Co., 74 N. J. Eq. 197, 212, 71 Atl. 605, and Tyler v. Judges of Court of Registration, 175 Mass. 71, 55 N. E. 812, 51 L. R. A. 433. In Boswell's Lessee v. Otis, 9 How. 336, 348, 13 L. ed 164, concerning a bill for specific performance, it was said to be immaterial whether the proceeding against the property be by an attachment or bill in chancery, and in Roller v. Holly, 176 U. S. 398, 405, 20 Sup. Ct. 410-412; 44 L. ed 520, that:

''The cases in which it has been held that a seizure or its equivalent, an attachment or execution upon the property, is necessary to give jurisdiction are those where a general creditor seeks to establish and foreclose a lien thereby acquired.''

None of the foregoing cases was an action *in rem* except as it had become substantially so by virtue of local statutes. And so, in divorce actions, where no personal judgment for alimony is sought, it has been held that the jurisdiction of the state court pursuant to statute to dispose of a nonresident's property in the state does not depend upon its seizure by process of the court at the commencement of the action. Twing v. O'Meara, 59 Ia. 326, 13 N. W. 321; Goore v. Goore, 24 Wash. 139, 63 Pac. 1092; Wesner v. O'Brien, 56 Kans. 724, 44 Pac. 1090; 32 L. R. A. 289; 54 Am. St. Rep. 604; Maxwell v. Maxwell, 106 Neb. 689; 184 N. W. 227; Wilder v. Wilder, 93 Vt. 105; 106, Atl. 562.

The case of Twing v. O'Meara involved the title to property which had been attached at the commencement of a divorce action against a nonresident served by publication. It was claimed that the decree could be attacked collateral-

ly because the attachment was void. The court did not pass upon the validity of the attachment, but said:

"We are of the opinion, however, that the court would have been justified in decreeing the property to Elizabeth Twing, as alimony, if no attachment had been procured. There was no necessity whatever for the attachment, except to prevent the defendant in that action from alienating his property before a decree could be obtained. The petition in this case conceded that notice of the divorce proceedings was duly and legally published. Section 2618 of the Code authorizes service by publication in an action for divorce, where the defendant is a non-resident of the state of Iowa, or his residence is unknown. Section 2229 of the Code provides that when a divorce is decreed the court may make such order in relation to the children, property, parties, and the maintenance of the parties, as shall be right and proper."

And it was also held that the fact that the petition for divorce did not describe any property, nor ask any relief except a divorce, with only a general prayer for alimony, was not a jurisdictional defect.

Twing v. O'Meara has been often cited with approval, notably in the later Iowa cases of Rea v. Rea, 123 Ia. 241; 98, N. W. 787 and Shipley v. Shipley, 187 Ia. 1295, 175 N. W. 51, and by the Supreme Court of the United States in Pennington v. Bank, supra.

We are therefore of opinion that land located in the state in the possession of the resident wife under such circumstances as justified the court in finding that she had a right of homestead in it, was brought under the jurisdiction of the court by the proceedings in the divorce action without any seizure by process. In these circumstances, we think the disposition of the land in that action was not a usurpation of power to be disregarded when incidentally challenged.

It may seem that some of the cited cases, in sustaining the jurisdiction to dispose of property as an incident to divorce, go further than the facts of this case require. In so far as they do, it is unnecessary, of course, for us to express approval or disapproval of them.

The judgment appealed from will be reversed and the cause remanded to the District Court with instructions to enter judgment that the plaintiff take nothing by his action and that defendant recover her costs.

*Reversed and Remanded.*

POTTER, Ch. J., and BLUME, J., concur.

NOTE—Under headnotes (1, 2, 5, and 6) see Divorce 19 C. J. Sec. 661-675; (3) Const. Law. 12 C. J. Sec. 1004 (4) Judgments 23 Cyc. 688.