HELENA B. PARKER *vs.* JOHN R. PARKER.

Suffolk.   November 13, 1912. — February 29, 1912.

Present: RUGG, C. J., HAMMOND, SHELDON, & DeCOURCY, JJ.

*Marriage and Divorce.   Superior Court.*

Review by RUGG, C. J., of the successive statutes of this Commonwealth authorizing a decree for alimony after the entry of a decree of divorce.

Where a decree for an absolute divorce was made in favor of a wife against a nonresident husband, who received notice of the proceedings only by mail and did not appear and whose property was not attached, the Superior Court under R. L. c. 152, § 30, although it had no jurisdiction to grant alimony when the decree

for the divorce was made, has jurisdiction to grant a petition of the libellant for alimony which was filed after the libellee had become a resident of this Commonwealth and was served upon him personally.

PETITION for alimony, filed in the Superior Court on January 13, 1911, alleging that the petitioner filed a libel for divorce against the respondent on November 18, 1909, and that on March 18, 1910, a decree of divorce *nisi* was entered in favor of the petitioner which became absolute on September 19, 1910, that when the libel was brought the respondent was not a resident of this Commonwealth, but that he had become a resident of the Commonwealth and that a decree for alimony against him could be enforced.

The respondent appeared specially by counsel for the purpose of contesting the jurisdiction of the court, and also demurred to the petition.

The case was heard by *Pierce,* J. The material facts as agreed by the parties are stated in the opinion. The judge ruled that the court had no jurisdiction to order the payment of alimony for the reason that there was no personal service of the original libel for divorce upon the libellee within this Commonwealth and that after the entry of a decree of absolute divorce the court had no further jurisdiction to decree alimony to the wife. By agreement of the parties the judge reported the case for determination by this court. If his ruling was right, the petition was to be dismissed; otherwise, such proceedings were to be had as justice might require.

*E. C. Bumpus,* for the petitioner.

*C. H. Frost, (A. L. Doggett* with him,) for the respondent.

RUGG, C. J. This is a petition for alimony brought after the entry of a decree absolute for divorce. Service of the original libel was by publication and mailing, the libellee then being a non-resident of this Commonwealth. He received the notice, but did not appear to contest the libel. His property was not attached. The marriage was solemnized in this Commonwealth. At the time this petition for alimony was filed the libellee had become a resident of this Commonwealth, and he was served personally with the order of notice upon this petition. He contests the jurisdiction of the court. The only question presented is whether, after a divorce absolute upon proceedings against a non-resident who has not appeared in the original suit, the Superior Court has

authority to decree alimony, provided personal service is made of a petition therefor.

Courts of this Commonwealth cannot grant alimony except and so far as authorized by the statutes. *Davol* v. *Davol,* 13 Mass. 264. *Shannon* v. *Shannon,* 2 Gray, 285. *Page* v. *Page,* 189 Mass. 85, 87. It has been held that relief in the nature of alimony cannot be afforded except as an incident in connection with a divorce. *Adams* v. *Adams,* 100 Mass. 365. The statute, R. L. c. 152, § 30, provides that "Upon a divorce, or upon petition at any time after a divorce, the Superior Court may decree alimony to the wife, or a part of her estate, in the nature of alimony, to the husband." This language in unequivocal terms authorizes the granting of alimony, although none was asked for in the original libel. *Burrows* v. *Purple,* 107 Mass. 428, 432, 433. This language also plainly permits that the alimony may be asked at a time after an affirmative decree upon the original libel. It does not in terms make jurisdiction to grant the alimony dependent upon the jurisdiction existing at the time a divorce was granted. There may be divorce in favor of a resident of this Commonwealth against a non-resident under various circumstances. See R. L. c. 152, §§ 4, 5, 8. It is strongly urged, however, that when the statute is read in the light of its history and its original enactment it confers jurisdiction to grant alimony only in cases in which, at the time of the decree for divorce, the court could have granted alimony. If that contention is sound, the respondent must prevail, for it is plain that the court then had no jurisdiction to grant alimony because there was no personal service upon the libellee and no attachment of his property on the original libel, and he did not appear and was at that time a non-resident. No decree for alimony could be binding against the libellee upon these facts. The court at that time had no jurisdiction of the defendant, and had no authority to enter a judgment for money against him. *Pennoyer* v. *Neff,* 95 U. S. 714. *Haddock* v. *Haddock,* 201 U. S. 562, 567. *Twining* v. *New Jersey,* 211 U. S. 78, 110.

Whether this position of the respondent is tenable depends upon a critical examination of our statutes on the subject. The first statute authorizing a decree for alimony after the entry of a decree for divorce was St. 1853, c. 23. By § 1 of this act, power was conferred "to make at any time, upon petition or proper process there-

for, any such decree of or respecting alimony . . . as the said court might have made in the original suit." Substantially the same language was retained in Gen. Sts. c. 107, § 48, while the language which was adopted in Pub. Sts. c. 146, § 36, is the same as that in R. L. 152, § 30, quoted above.

In 1853 the authority to grant alimony was somewhat limited. The causes for absolute divorce from the bond of matrimony were adultery, impotency or sentence in the State prison, jail or house of correction for a period of seven years or more (Rev. Sts. c. 76, § 5), utter desertion unconsented to for five consecutive years (St. 1838, c. 126), and uniting with a religious sect, by whose belief the relation of husband and wife was void, and continuing to live with such sect for three years (St. 1850, c. 100) while a divorce from bed and board might be granted for extreme cruelty or utter desertion, and on the libel of the wife, when the husband, being of sufficient ability, grossly, wantonly and cruelly refused or neglected to supply for her suitable maintenance. (Rev. Sts. c. 76, § 6.) There were certain statutes providing for restoration to the wife upon dissolution of marriage, of her separate property to which, under the law in force at that time, the husband had become entitled upon the marriage. (Rev. Sts. c. 76, §§ 27–30.) Unlimited alimony could be granted to the wife, however, only upon a divorce granted upon her libel for the adultery, impotency, uniting with a sect which believed marriage void and sentence to a penal institution, of the husband. Rev. Sts. c. 76, § 31. St. 1844, c. 129. St. 1850, c. 100, § 3. But upon divorce from bed and board for the causes authorized therefor alimony could be granted only in the event that the estate and effects of the wife restored to her under Rev. Sts. c. 76, §§ 27–30, were insufficient for her support. Rev. Sts. c. 76, § 31. By St. 1857, c. 228, utter desertion for five consecutive years and a living separately for five years after a divorce from bed and board were added to the causes in which unrestricted alimony might be granted. In this respect the law remained the same in the Gen. Sts. c. 107, §§ 43, 44. When the General Statutes were enacted, no alimony was permitted in divorces from bed and board for the causes then allowed, namely, for cruelty, desertion, or gross and confirmed habits of intoxication, or gross and wanton neglect on the part of the husband being of sufficient ability to support his wife, unless the

estate of the wife restored to her under c. 107, § 40, was insufficient for her support. Although in general alimony might be decreed to the wife upon a divorce granted to the husband for her fault (*Graves* v. *Graves*, 108 Mass. 314, *Brigham* v. *Brigham*, 147 Mass. 159), yet there was, in addition to those heretofore enumerated, the important limitation upon this power in Rev. Sts. c. 76, §§ 33, 34 (Gen. Sts. c. 107, § 39), to the effect that in cases of divorce to the husband for the adultery of the wife, the husband should hold her personal property forever and her real estate so long as they both lived, the court being authorized only to decree enough out of such estate, or its income, as might suffice for her subsistence. If she had brought no property to the husband upon or during the marriage, no alimony could be granted to her.

It is obvious from this review of the statutes that the power of the court to grant alimony in the "original suit" was a limited one in 1853 and in 1860. It is apparent that the words of St. 1853, c. 23, § 1, and Gen. Sts. c. 107, § 48, confining alimony ordered upon a subsequent petition to the conditions under which it might have been granted at the time the decree for divorce was entered, had a substantial and practical meaning in the light of these statutory provisions. It was not until the enactment of St. 1873, c. 371, §§ 3, 7, that unrestricted power was conferred upon the court to grant alimony. The language of Gen. Sts. c. 107, § 47, was not then changed, but upon the enactment of the Public Statutes the various sections were brought into consistent and harmonious relation with each other, and naturally there were eliminated the words of limitation, which had been in St. 1853, c. 23, § 1, and Gen. Sts. c. 107, § 48, referring to the original libel for divorce for the definition of the power to grant the alimony upon the subsequent petition. They no longer had any meaning, because there was no longer any limitation upon the power of the court to grant alimony. Thus it appears that the words in St. 1853, c. 23, § 1, and Gen. Sts. c. 107, § 48, permitting the court to make such decree upon a petition for alimony filed subsequent to the divorce, as it "might have made in the original suit," were descriptive of the extent to which, and the conditions under which, alimony could be granted. They conferred the power and defined its scope. They were absolutely necessary in order that the alimony possible under the supplementary petition might not be distinctly larger in character than

that upon the original libel. They did not refer to the kind of service made upon the libellee and the personal jurisdiction acquired over him thereby. That was left to be determined in accordance with the common rules of practice.

Thus it appears that the history of the statute furnishes no occasion for narrowing its plain import. Its words should be given their natural and unrestrained meaning. This result is in accordance with reason. It is inconceivable that the Legislature consciously used language which would permit a husband, who has resided with his wife in this Commonwealth, to violate his nuptial obligations, to remove beyond the reach of our juridical process and then, after the marriage bond has been severed by our courts at the instance of his wife, to return to the matrimonial domicil freed from all obligation to the woman he has wronged and from possibility of being compelled to make financial reparation to her. Such a conclusion ought not to be reached except under the compulsion of unequivocally precise statutory language.

It follows that the Superior Court had jurisdiction, when a personal service was made upon the libellee on his return to this Commonwealth, to deal with a petition for alimony against him, although at the time of the granting of the original libel it would have had no personal jurisdiction over him.

*Demurrer overruled; respondent to have leave to answer.*