In re the MARRIAGE OF William R. SCHOBER and Betty L. Schober.

Upon the Petition of William R. Schober, Petitioner-Appellant,

And Concerning Betty L. Schober, Respondent-Appellee.

No. 84–1998.

Court of Appeals of Iowa.

Oct. 29, 1985.

Randall E. Nielsen of Pappajohn, Shriver, Eide & Nicholas, Sioux City, for petitioner-appellant.

Christopher F. O'Donohoe of O'Donohoe, O'Connor & O'Donohoe, New Hampton, for respondent-appellee.

Considered by DONIELSON, P.J., and SCHLEGEL and HAYDEN, JJ.

DONIELSON, Presiding Judge.

The husband appeals from the district court's refusal to modify the alimony award in the parties' 1981 dissolution decree. He contends the district court erred by finding he had failed to prove changes of circumstance not within the contemplation of the dissolution court. He also contends the district court erred by denying his motion to amend the pleadings to conform to the proof.

The wife has filed a separate appeal from the district court order awarding her attorney's fees. She contends the district court's award of attorney's fees was inadequate. The husband has cross-appealed from the district court's attorney fee award; he argues the award should be reduced. She seeks $706 for appellate at-

torney fees and William also resists this request.

The parties' 26-year marriage was dissolved in 1981. The dissolution decree directed William to pay Betty alimony of $1100 per month. The evidence taken at the 1981 dissolution hearing showed the parties' children were all adults, William earned over $50,000 per year from his private practice as a physical therapist, Betty had been a homemaker during the marriage and therefore had limited earning potential, and the parties had little property to divide because they had supported a failed business venture operated by their adult son-in-law.

The provisions of the 1981 dissolution decree were affirmed by the court of appeals in 1982.

In 1983, William filed the present application to modify the 1981 dissolution decree. He alleged that circumstances had changed because Betty was now receiving financial assistance and gifts of property from a man with whom she cohabited. He also alleged that the cohabitation amounted to a common-law marriage in contravention of the dissolution decree's provision that alimony would terminate upon remarriage.

The district court granted Betty's motion to dismiss William's modification proceeding. William has appealed. He contends the district court erred by concluding that he had failed to show changes of circumstances not within the contemplation of the dissolution court. He also contends the district court erred by refusing to grant his motion to amend the pleadings to conform to the proof. He has apparently abandoned his contention that a common-law marriage exists.

## I. Alimony

William's principal contention is that Betty's cohabitation with another man constitutes a substantial change of circumstances not contemplated by the dissolution court which merits a modification, if not a cessation, of alimony payments.

The rule in Iowa provides that while the subsequent remarriage of a spouse does not result in automatic termination of an alimony obligation, it shifts the burden to the recipient spouse to show that extraordinary circumstances require the continuation of alimony payments. *In re Marriage of Shima*, 360 N.W.2d 827, 828 (Iowa 1985); *see also In re Marriage of Woodward*, 229 N.W.2d 274, 280 (Iowa 1975); *Myers v. Myers*, 195 N.W.2d 113, 114 (Iowa 1972). The Iowa courts have recognized that extraordinary circumstances for purposes of this rule can, *inter alia*, consist of the inability of a subsequent spouse to furnish support. *Id.* at 829 (citing *Dietrick v. Dietrick*, 99 N.J.Eq. 711, 134 A. 338 (1926)). The *Shima* court held the spouse receiving alimony failed to meet her burden of proof because she did not show her present husband was unable to support her.

■ While the aforementioned authority provides an instructive background, our situation deals with cohabitation, not remarriage. Because remarriage does not result in an automatic termination of alimony, neither does cohabitation. The dispositive issue in a modification of alimony suit should be whether the recipient spouse needs continued alimony; not the spouse's present living arrangement (i.e., whether such spouse has remarried or is merely cohabiting with an unrelated member of the opposite sex). The issue of cohabitation is clearly a "relevant factor" within the meaning of section 598.21(3)(1) and may well affect Betty's need for support.

■ It is necessary to review Betty's present financial status to determine whether continued alimony is justified. William asserts that Betty provides valuable services to Jack McClain, Betty's cohabitant, who is in the trucking business. Betty has a chauffeur's license but maintains she only drives for Jack when he needs a rest during a long haul; otherwise Jack claims he would not hire another driver to accompany him on such trips.

Jack also granted Betty a one-half interest in his homestead such that her share has a net value of $15,500. She makes monthly payments of $315 on the home mortgage. Betty contends Jack permits

her to live in the house in exchange for domestic services.

The $1,100 Betty receives in monthly alimony is allegedly kept in a separate account and such funds are used to pay the premiums on a $50,000 insurance policy covering Jack's life. Testimony indicated that Betty would receive all of Jack's property upon his death under his current testamentary scheme.

Betty claims expenses of $1,700 monthly and testified that the difference between expenses and alimony is covered by money from her sisters and Jack. Testimony was introduced that Jack and Betty commingled their funds to meet living expenses and that, in reality, the parties' living expenses are paid by Jack.

Despite the disputed level of support Jack provides Betty, we find that Betty's relationship with Jack did not substantially alter her financial needs. Given the lack of property to be divided upon dissolution due to the failed business and the dissolution court's knowledge, albeit sketchy, of Betty's cohabitation with Jack, we hold that the trial court's modification decision shall not be disturbed. This decision, however, does not mean that we are completely satisfied with the result. We are disturbed by the trial court's conclusion and testimony by Betty's daughter that Betty probably did not enter into a marital relationship with Jack because of her fear of foregoing the $1,100 monthly alimony payments. It is unfortunate that the current status of Iowa law on modification of alimony precipitates the decision to engage in a meretricious relationship by cohabiting, when marriage is the desire of the parties, so as not to jeopardize alimony payments.

One state has created a rebuttable presumption of reduced need for support if it is shown that the recipient spouse is cohabiting with an unrelated member of the opposite sex. *See* California Civil Code § 4801.5(b) (1984). Other states provide if cohabitation is shown, this is an automatic ground for termination of alimony. *See* Code of Alabama, 30-2-55 (1983); Georgia Code 30-220(b) (1984); 40 Illinois Statutes Annotated ¶ 510(a)(b) (1984); Utah Code Annotated, 30-3-5(3) (1984). Although we do not mandate a shifting of the burden of proof to recipient spouses who cohabit, as is the practice in remarriage cases under Iowa law, these developments indicate that a re-evaluation of this state's principles on modification of alimony may well be done in the future.

Based on this record, we find no error in the court's handling of the motion to amend the pleadings to conform to the proof.

## II. Attorney Fees

■ Betty was awarded $1,591.78 in attorney fees by the trial court. She seeks an additional $1,300 in attorney fees, while William seeks a reduction in the awarded fees. She also seeks $706 in appellate attorney fees.

In awards of attorney fees, the court considers the resources of the party requesting such fees, the ability of the other party to pay, and whether the requesting party was obligated to defend the trial court's decision on appeal. *In re Marriage of Castle*, 312 N.W.2d 147, 150 (Iowa Ct. App.1981). The primary consideration in making an award of attorney fees in a dissolution proceeding is the resources of the parties. *In re Marriage of Lattig*, 318 N.W.2d 811, 817 (Iowa Ct.App.1982).

After a thorough review of the record and resources of the parties, we find $1,591.78 is an appropriate award of trial attorney fees. We feel the parties are capable of paying their own respective appellate attorney fees.

AFFIRMED [1].

1. We refer appellee's counsel to Iowa Rule of Appellate Procedure 16(a) which provides: "The appendix and brief shall be printed or duplicated on *both* sides of the sheet." This rule shall be followed in all future submissions counsel makes to this forum.