SANDRA L. GOTTSEGEN *vs.* ROBERT S. GOTTSEGEN.

Worcester. December 2, 1985. — May 22, 1986.

Present: HENNESSEY, C.J., WILKINS, LIACOS, ABRAMS, & NOLAN, JJ.

*Divorce and Separation,* Judgment, Separation agreement, Alimony, Modification of judgment, Relief from judgment. *Contract,* Separation agreement.

Discussion of the history of judicial jurisdiction over alimony. [621-624]

A judgment of divorce, into which were merged the financial provisions of the parties' separation agreement, could not lawfully provide for the termination of alimony on the wife's "cohabitation with the same unrelated man with whom the wife has a romantic relationship for more than two (2) consecutive months," inasmuch as the fact of cohabitation, as so described, cannot be assumed to have any effect on the wife's economic circumstances or her need for alimony. [624-626] HENNESSEY, C.J., concurring. NOLAN, J., dissenting.

A probate judge's findings as to a former wife's cohabitation could not support a conclusion that any material change had occurred in her economic circumstances warranting modification of the alimony provisions of a judgment of divorce. [626-627]

A motion under Mass. R. Dom. Rel. P. 60 (b) (1975) for relief from a divorce judgment was not timely, where it was brought more than one year after judgment was entered and where, to the extent the moving party's allegations were cognizable under rule 60 (b) (6), the judge correctly concluded that the motion was not brought within a reasonable time after the entry of judgment. [627-629]

COMPLAINT for divorce filed in the Worcester Division of the Probate and Family Court Department on December 11, 1980.

A contempt proceeding commenced on October 12, 1983, was heard by *Francis W. Conlin,* J., and other motions were considered by him.

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

*Monroe L. Inker* (*Robert J. O'Regan* with him) for the plaintiff.

*Robert J. Kates* (*Douglas S. Segal* with him) for the defendant.

ABRAMS, J. We hold that in a judgment for divorce, a judge of a Probate Court may not order the termination of alimony on the occurrence of an event unrelated to the recipient spouse's need for alimony or the supporting spouse's ability to pay.

On December 11, 1980, the plaintiff, Sandra L. Gottsegen, filed a complaint for divorce in the Probate and Family Court on the ground of irretrievable breakdown of her marriage to the defendant, Robert S. Gottsegen. G. L. c. 208, § 1A. A judge of the Probate Court entered a judgment of divorce nisi on August 3, 1981. On October 12, 1983, the plaintiff filed a complaint for civil contempt against the defendant for violation of the August 3, 1981, order. The judge dismissed the complaint,[1] but awarded counsel fees to the plaintiff. Both parties appealed. The plaintiff then retained new counsel and, on April 24, 1984, moved for relief from the judgment of divorce under Mass. R. Dom. Rel. P. 60 (b) (1975), and concurrently moved for leave to take discovery, for an evidentiary hearing, and for reference to a master. The judge allowed the defendant's motion to strike the various motions, and denied the plaintiff's subsequent motion for reconsideration. The plain-

---

[1] On the reverse side of the contempt complaint appears a notation signed by the judge that the complaint was dismissed on January 30, 1984. The docket bears no entry of judgment. Rule 58 (a) of the Massachusetts Rules of Domestic Relations Procedure (1975) requires that "[u]pon a decision by the court that a party shall recover only a sum certain or costs or that all relief shall be denied, . . . the court shall forthwith prepare, sign and enter judgment . . . . Every judgment shall be set forth on a separate document. A judgment is effective only when so set forth and when entered as provided in Rule 79 (a)" (requiring the clerk to enter all judgments in the docket). "Although the better practice calls for the preparation of a separate document of judgment," *Lewis* v. *Emerson,* 391 Mass. 517, 520 (1984), and the judgment should have been entered on the docket, there is no confusion or dispute in this case that the judgment was entered January 30, 1984. The purposes of rule 58 (a) have therefore been served, and there is no reason "to prevent the parties' exercise of their posttrial and appellate rights on the basis of clerical niceties." *Id.*

tiff appealed the allowance of the motion to strike. The appeals were consolidated. We transferred the case here on our own motion. We now affirm the rulings on the motion for relief under rule 60 (b) and on counsel fees. We vacate and remand the ruling on contempt.

Before the plaintiff filed for divorce, she and the defendant executed a separation agreement. Under art. V.3 of the separation agreement, the parties agreed to request the Probate Court to incorporate the terms of the agreement into a final judgment of divorce. They further agreed that if the court did so, the provisions of art. III of the agreement ("Financial Arrangements Relating to Wife") would be merged in the judgment, but that the remaining provisions would survive as an independent contract. In the judgment of divorce nisi, the court ordered that the agreement be made a part of the judgment. The clauses here in controversy derive from art. III of the agreement which, by the terms of the agreement, merged into the judgment and did not survive.[2] They therefore have no legal significance independent of the divorce judgment. See *Knox* v. *Remick,* 371 Mass. 433, 435 (1976). Cf. *Bell* v. *Bell,* 16 Mass. App. Ct. 188, 190 (1983) (agreement survives judgment and has independent significance), rev'd on other grounds, 393 Mass. 20 (1984).

Paragraph A.1 of art. III of the judgment requires the defendant to pay the plaintiff $812.50 per month for her support and maintenance. Paragraph A.5 of art. III provides that, "[i]n the event of the wife's remarriage (as hereinafter defined) at any time prior to the fifth (5th) anniversary of the date of execution hereof, the husband's support obligation . . . shall thereupon terminate and be substituted by an obligation to pay to the wife, or for her benefit, for her support and maintenance" $30,000, at the rate of $833.33 per month for three years.

---

[2] At oral argument, the defendant noted that the merger clause applies to "the provisions of art. III above with respect to the financial arrangements between the parties," and argued that the disputed clause, although contained in art. III, is not a provision concerning "financial arrangements." Because the clause triggers a termination of support payments, it is an integral part of the "financial arrangements."

Paragraph A.9 provides, "The remarriage of the wife shall, for purposes of this Agreement, be deemed to include her cohabitation with the same unrelated man with whom the wife has a romantic relationship for more than two (2) consecutive months."

1. *The civil contempt complaint.* In early 1983, the defendant began to suspect that the plaintiff was cohabiting with one L.W. After confirming his suspicions through personal observation and the report of a private investigator, the defendant concluded that the plaintiff had been cohabiting with L.W. for more than two consecutive months. On July 15, 1983, he commenced making monthly payments of $833.33, pursuant to the remarriage and cohabitation clauses of the agreement.

The plaintiff responded to the changed alimony payments by filing a complaint for civil contempt. The defendant denied that he was in contempt of the divorce judgment. He counterclaimed to request a judgment declaring that the plaintiff had remarried pursuant to paragraph A.9 of art. III of the agreement and determining the date of the remarriage and his further alimony obligations. The parties stipulated that the plaintiff had a romantic relationship with L.W. The judge found that, during the seven-week period from April 17 through June 5, 1983, the plaintiff and L.W. spent the night together on an average of at least 5.5 nights per week, including one period of seventeen consecutive nights. The judge made detailed findings about the plaintiff's and L.W.'s living, social, and financial arrangements, including the following: "40. [L.W.] and Mrs. Gottsegen have never represented to be man and wife, even on over night trips. 41. Mrs. Gottsegen receives no financial support from Mr. [L.W.] except [that] he pays for about 85% of the cost of eating out. Mrs. Gottsegen provided no financial support to [L.W.]. 42. Mrs. Gottsegen and [L.W.] have no joint assets of any kind. 43. Mrs. Gottsegen and [L.W.] maintain separate residences. 44. There is a continuing need for alimony for Mrs. Gottsegen." The judge concluded that the plaintiff and L.W. were cohabiting for more than two consecutive months within the terms of the cohabita-

tion clause,[3] and that the remarriage provisions should take effect as of June 1, 1983. He concluded by finding the defendant not in contempt.

We begin our analysis by considering briefly the history of judicial jurisdiction over alimony. In England, questions of divorce and alimony were not within the jurisdiction of the common law courts, but instead were decided by the ecclesiastical courts, applying canon law. 1 Legal Papers of John Adams 281 (L. Wroth & H. Zobel 1965).[4] Because there was no alimony jurisdiction at common law, this court early held that the power to grant alimony was wholly statutory. *Davol* v. *Davol*, 13 Mass. 264, 264-265 (1816). See *Orlandella* v. *Orlandella*, 370 Mass. 225, 227 (1976); *Parker* v. *Parker*, 211 Mass. 139, 141 (1912). In 1692, the provincial Legislature vested jurisdiction over all questions of marriage and divorce in the Governor and Council. Province Laws 1692-1693, c. 25, § 4. In 1695, the justices of the Superior Court of Judicature were empowered to assign to a wife whose marriage had been nullified by reason of consanguinity "such reasonable part of the estate of her late [i.e., former] husband as in their discretion the circumstances of the estate may admit." Province Laws 1695-1696, c. 2, § 3.[5] By St. 1785, c. 69, § 7, the Legislature

---

[3] We need not decide whether "cohabitation," as used in this divorce judgment, encompasses an arrangement in which the parties are together on an almost daily basis and frequently eat meals together, even though they maintain separate residences and neither mingle financial assets nor support each other financially.

[4] The ecclesiastical courts granted two types of divorce decree: absolute divorce (a vinculo matrimonii, "from the bonds of matrimony") when the marriage was a nullity because of defects such as consanguinity or impotence; and divorce from bed and board (a mensa et thoro) when the grounds were adultery, cruelty, and the like. 1 Legal Papers of John Adams, *supra* at 281, 282. In the latter case, the marriage itself was considered valid and unbreakable. The legal effect was that of a decree for separation and maintenance, and the husband was required to pay alimony under the theory that "since the marriage still existed, he was merely continuing to perform the duty of support which he would have had in normal course." *Id*. at 282, 283.

[5] The act also provided for criminal penalties in the case of incestuous marriage: "such man and woman so convicted shall be set upon the gallows by the space of an hour, with a rope about their neck and the other end

enacted comprehensive legislation regulating marriage and divorce, and directed that all questions of divorce and alimony be heard by the Supreme Judicial Court. The act set out several grounds for divorce — more limited than are available today — and provided for property settlement and alimony that varied according to the grounds for divorce.[6] The property settlement and alimony scheme reflected the necessity of providing support for women who, by social convention and traditional property law, were usually dependent on their husbands.

In *Holbrook* v. *Comstock,* 16 Gray 109, 110 (1860), this court defined alimony as "that portion of the husband's estate which is allowed [the wife] for her present subsistence and livelihood."[7] In subsequent years, as the Legislature gradually expanded the conditions in which alimony could be granted, see *Parker* v. *Parker,* 211 Mass. 139, 141-143 (1912), the support purposes behind alimony remained constant. Thus, in *Topor* v. *Topor,* 287 Mass. 473 (1934), we stated, "The word 'alimony' as used in our statutes carries the meaning of money

cast over the gallows, and in the way from thence to the common [gaol] shall be severely whipped, not exceeding forty stripes each; also every person so offending shall forever after wear a capital I of two inches long and proportionable bigness, cut out in cloth of a contrary colour to their cloaths, and sewed upon their upper garments on the outside of their arm or on their back in open view." Province Laws 1695-1696, c. 2, § 2. Thus did the provincial authorities ensure punishment for incestuous marriage consistent with punishment for adultery. See Province Laws 1694-1695, c. 5, § 2; N. Hawthorne, The Scarlet Letter (1850).

[6] For example, in cases of absolute divorce, the statute required that the wife be restored to all her lands, tenements and hereditaments, and all or part of her personal estate held by the husband, but made no provision for alimony. See *Davol* v. *Davol, supra.*

[7] Compare the ecclesiastical definition of alimony: "that proportion of the Husband's Estate, which the Wife sues in the Ecclesiastical Court, to have allowed her for her present subsistence and livelyhood, according to Law, upon any such separation from her Husband, as is not caused by her own *elopement or Adultery*" (emphasis in original). 1 Legal Papers of John Adams, *supra* at 284 n.19, quoting J. Godolphin, Repertorium Canonicum 508 (3d ed. 1687). See also *Cole* v. *Cole,* 142 Ill. 19, 25-27 (1892). Ecclesiastical principles formerly were an important source of law for interpreting and applying the alimony statutes in this Commonwealth. See, e.g., *Graves* v. *Graves,* 108 Mass. 314, 321 (1871); *Davol* v. *Davol,* 13 Mass. 264, 265 (1816); 1 Legal Papers of John Adams, *supra* at 283.

or property which under order of court as husband provides for the support and maintenance of his wife and such minor children as are committed to her custody. . . . From the nature of the word 'alimony' support or maintenance of the recipient is an essential element." (Citations omitted.) *Id.* at 475.

Throughout this period, the amount of alimony to be granted lay in the "just and reasonable" discretion of the court. While mere subsistence may have been the minimum to which the wife was entitled, the court could grant greater sums depending on the property and capacity of the husband. *Graves* v. *Graves,* 108 Mass. 314, 321 (1871). By 1916, it was clear that support and maintenance comprehended "the condition in life of the parties and their mode of living," *Brown* v. *Brown,* 222 Mass. 415, 417 (1916), which, the court later explained, meant "maintain[ing] her and the family according to the property and condition in life of her husband." *Coe* v. *Coe,* 313 Mass. 232, 236 (1943), quoting *Jordan Marsh Co.* v. *Cohen,* 242 Mass. 245, 249 (1922).

In 1974, the Legislature substantially revised the statutory treatment of alimony. G. L. c. 208, § 34, as appearing in St. 1974, c. 565. See generally *Bianco* v. *Bianco,* 371 Mass. 420 (1976). The amendment made alimony available to either party, depending on the needs and circumstances of the case. The statute now requires the court, in determining the amount of alimony, to consider "the length of the marriage, the conduct of the parties during the marriage, the age, health, station, occupation, amount and sources of income, vocational skills, employability, estate, liabilities and needs of each of the parties and the opportunity of each for future acquisition of capital assets and income." G. L. c. 208, § 34 (1984 ed.). The statute affords the judge considerable discretion, but also defines the scope of that discretion by requiring the judge to consider all the factors set forth by the statute. *Bianco* v. *Bianco, supra* at 423.

Despite these changes, § 34 does *not* alter the fundamental purpose of alimony: to provide economic support to the dependent spouse. As the Appeals Court recently noted, "[t]he focus of any financial award must include 'the crucial issue in an

alimony dispute, namely, the [spouse's] need for support and maintenance in relationship to the respective financial circumstances of the parties.' " *Grubert* v. *Grubert,* 20 Mass. App. Ct. 811, 819 (1985), quoting *Partridge* v. *Partridge,* 14 Mass. App. Ct. 918, 919 (1982). Thus, the statutory authority of a court to award alimony continues to be grounded in the recipient spouse's need for support and the supporting spouse's ability to pay. A court may not limit alimony for reasons unrelated to its statutory base. See *Levine* v. *Levine,* 394 Mass. 749, 752 n.4 (1985). Accord *Mitchell* v. *Mitchell,* 418 A.2d 1140, 1143 (Me. 1980); *Marriage of Grove,* 280 Or. 341, 354 (1977); *Overson* v. *Overson,* 125 Wis.2d 13, 17-18 (Ct. App. 1985). Any event that triggers a change in alimony must bear some relation to the financial circumstances of the parties.

We turn now to the precise issue here presented: whether the judge properly ordered in the original judgment that alimony be terminated on the wife's "cohabitation with the same unrelated man with whom the wife has a romantic relationship for more than two (2) consecutive months." A divorced spouse has no right to exercise control over a former spouse's life, and a court may not attempt to create such a right through the alimony provisions of a divorce judgment.[8] See *Mitchell* v.

---

[8] The judge's lack of discretion to order alimony terminated on mere cohabitation does not prevent a divorcing couple from including such a provision in a separation agreement that survives the entry of the divorce judgment. In *Bell* v. *Bell,* 393 Mass. 20 (1984), cert. denied, 470 U. S. 1027 (1985), this court affirmed the dismissal of a contempt complaint brought by the recipient spouse, on the ground that, under the terms of an independent, surviving separation agreement, *Bell* v. *Bell,* 16 Mass. App. Ct. 188, 190 (1983), she had "liv[ed] together with a member of the opposite sex, so as to give the outward appearance of marriage." *Bell* v. *Bell,* 393 Mass. at 21. The court thereby allowed the defendant husband to raise the surviving agreement as a bar to the contempt proceeding. See *Knox* v. *Remick,* 371 Mass. 433, 438 (1976).

As we discussed *supra,* the cohabitation provisions of the separation agreement in this case did not survive as an independent contract. There is no agreement to be enforced in a contract action, only a court order enforceable in an action for contempt. The original court order for which enforcement is sought must have been within the court's discretion when made. As our discussion of the history of alimony jurisdiction, *supra,* makes clear, the court's discretion in ordering alimony is limited to the economic — not

*Mitchell,* 418 A.2d 1140, 1143 (Me. 1980) ("Modification of alimony on the basis of moral judgments of the recipient's living arrangements would be beyond the scope of the divorce court's discretion"). Nor may a judge, in formulating the divorce judgment, assume that cohabitation of the type described here would have any effect on the recipient spouse's economic circumstances and the need for alimony. "The extent of actual economic dependency, not one's conduct as a cohabitant, must determine the duration of support as well as its amount." *Gayet* v. *Gayet,* 92 N.J. 149, 154 (1983). Thus, the Probate Court may not in the original divorce judgment order alimony to be terminated on mere cohabitation.[9]

Nevertheless, the court may later modify the original judgment if the petitioner demonstrates a material change of circumstances. *Schuler* v. *Schuler,* 382 Mass. 366, 368 (1981), and cases cited. The court "may make any judgment relative [to the modification of the original judgment] which it might have made in the original action." G. L. c. 208, § 37 (1984 ed.). Thus, if the supporting spouse shows that, as a result of cohabitation, the recipient spouse's economic circumstances have materially changed, then the court may alter or eliminate alimony. However, a judge may not modify a judgment solely on the basis of a finding of cohabitation. Such an order is not within the court's discretion under G. L. c. 208, § 34.[10] Most

the social — circumstances of the parties. The parties cannot by their own agreement confer discretion on a court to issue an order not otherwise within its statutory authority. Where, as here, the sole issue raised is one of authority under the statute, the intent of the parties is irrelevant.

[9] If the parties submit such a clause to the court for incorporation in the judgment, as was done in this case, the court should inform the parties that such an order is beyond the scope of its discretion. The court may then allow the parties an opportunity to renegotiate a proposed order to present to the court, or may incorporate in the judgment some or all of the allowable portion of the agreement. Nothing in today's decision, however, disturbs our holding in *Moore* v. *Moore,* 389 Mass. 21, 23-24 (1983), that the Probate Court may not order that a separation agreement shall not survive when the parties clearly intended that it should.

[10] Under § 34, the court may consider the parties' conduct *during* the marriage as one factor in determining an alimony award, but may not base the award only on a spouse's blameworthy conduct. See *Rice* v. *Rice,* 372

State courts that have considered the issue are in accord with our conclusion. See *Marriage of Schober,* 379 N.W.2d 46 (Iowa Ct. App. 1985); *Fleming* v. *Fleming,* 221 Kan. 290 (1977); *Mitchell* v. *Mitchell,* 418 A.2d 1140 (Me. 1980); *Petish* v. *Petish,* 144 Mich. App. 319 (1985); *Sieber* v. *Sieber,* 258 N.W.2d 754 (Minn. 1977); *Bisig* v. *Bisig,* 124 N.H. 372 (1983); *Gayet* v. *Gayet, supra; Hazelwood* v. *Hazelwood,* 89 N.M. 659 (1976); *Myhre* v. *Myhre,* 296 N.W.2d 905, 908 (S.D. 1980); *Stahl* v. *Stahl,* 136 Vt. 90 (1978); *Wight* v. *Wight,* 168 W. Va. 334 (1981); *Van Gorder* v. *Van Gorder,* 110 Wis.2d 188 (1983). See also *Marriage of Lieb,* 80 Cal. App. 3d 629 (1978), and *Kaplan* v. *Kaplan,* 186 Conn. 387 (1982), construing statutes.

In this case, there are no grounds for modification of the original alimony award. The judge made detailed findings on the financial arrangements between the plaintiff and L.W. He found that neither the plaintiff nor L.W. supported the other, with the exception of L.W.'s payment of about 85% of the cost of dining out; that they have no joint assets of any kind; that they maintain separate residences; and that there is a continuing need for alimony by the plaintiff. These findings could not support a conclusion of material change of circumstances sufficient to justify modification of the original judgment.

We conclude that the judge's dismissal of the complaint for contempt on factors unrelated to the financial circumstances of the parties is error and that the judge's findings do not otherwise warrant a modification of the judgment. We therefore vacate the dismissal of the complaint for contempt and remand that portion of the case for proceedings consistent with this opinion.[11] To prevent any confusion, we order the judgment to

Mass. 398, 401 (1977). After a divorce is final, a court may not condition alimony on either party's subsequent conduct. See *Zildjian* v. *Zildjian,* 8 Mass. App. Ct. 1, 17 (1979). Nor may a judge penalize either spouse for companionship with another person after the divorce is final.

[11] The plaintiff also argues that enforcement of the cohabitation clause violates her rights under the Federal Constitution and the Massachusetts Declaration of Rights. Because that argument was not raised below, we do

be modified by striking paragraph A.9 of art. III, pursuant to our equitable power under G. L. c. 211, § 3 (1984 ed.). See *Moore* v. *Moore,* 389 Mass. 21, 26 (1983).

2. *The motion for relief from judgment.* After her complaint for contempt was dismissed, the plaintiff filed a motion for relief from judgment under Mass. R. Dom. Rel. P. 60 (b), along with motions for reference to a master, for evidentiary hearing, and for leave to take discovery. The defendant moved to strike all those motions, and for an award of the defendant's attorney's fees and costs. The judge allowed the defendant's motion to strike and denied the request for attorney's fees and costs. The judge subsequently denied the plaintiff's motion for reconsideration. The plaintiff appeals. Looking beyond the form to the substance, we treat the defendant's motion to strike as a motion in opposition to the plaintiff's motion under rule 60 (b), and the judge's allowance of the motion to strike as a dismissal of the plaintiff's motion.

In her motion for relief from the divorce judgment, the plaintiff alleges that the original agreement was unfair and unreasonable because it awarded her no property and only minimal alimony, and because the cohabitation clause is contrary to public policy. The plaintiff also alleges that, in approving the agreement, the judge failed to consider all the factors

not reach or decide any of the constitutional issues.

On cross appeal, the defendant argues that the judge erred in determining the plaintiff's date of remarriage under the terms of the judgment. In light of our disposition of the plaintiff's appeal, we need not consider this aspect of the cross appeal. The defendant also argues on cross appeal that the probate judge erred in awarding $4,000 in fees to the plaintiff's trial counsel in the contempt proceeding. Under Mass. R. Dom. Rel. P. 46 (1975), the defendant was obliged to "make[ ] known to the court . . . his objection to the action of the court and his grounds therefor." Although the defendant filed a motion for reconsideration after the judge's decision, there is no indication on the record that the defendant objected to the plaintiff's motion for counsel fees at the time the award was made. Therefore, the issue was not preserved for appeal. *Cassamasse* v. *J.G. Lamotte & Son,* 391 Mass. 315, 320 (1984). Even if it had been, there is no showing — particularly in light of our disposition of the contempt complaint — that the award is incommensurate with an objective evaluation of the services performed or that the judge otherwise abused his discretion. *Ross* v. *Ross,* 385 Mass. 30, 38-39 (1982). See *Grubert* v. *Grubert,* 20 Mass. App. Ct. 811, 819-820 & n.15 (1985).

under G. L. c. 208, § 34, and in particular ignored the plaintiff's needs and contribution to the marital enterprise. Finally, she alleges that the defendant committed fraud and made misrepresentations both to her and to the court, and that her assent to the agreement was obtained through duress.

There was no error. Under rule 60 (b),[12] a motion for relief from judgment because of fraud, misrepresentation, or other misconduct of an adverse party must be brought within one year after the judgment was entered. The judgment of divorce nisi was entered on August 3, 1981, and the judgment of divorce absolute took effect six months later.[13] Because the record does not support a determination that the plaintiff did not know or could not have known of the alleged fraud and misrepresentation between then and April 23, 1984, when she filed her rule 60 (b) motion, we conclude that the judge did not err in dismissing the fraud and misrepresentation claims.

We assume, without deciding, that the plaintiff's remaining allegations of unfairness and unreasonableness amount to "any other reason justifying relief from the operation of the judgment" under rule 60 (b) (6). Such claims must be filed "within a reasonable time" from the date of entry of the judgment. We may further assume that the plaintiff's remaining allegations, if true, would be sufficient grounds for the court to vacate the judgment. Even so, the plaintiff has suggested no reason why she could not have brought her motion earlier. The grounds

---

[12] Rule 60 (b) of the Massachusetts Rules of Domestic Relations Procedure provides: "On motion and upon such terms as are just, the court may relieve a party or his legal representative from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b); (3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party; . . . or (6) any other reason justifying relief from the operation of the judgment. The motion shall be made within a reasonable time, and for reasons (1), (2), and (3) not more than one year after the judgment, order or proceeding was entered or taken."

[13] We need not decide whether, for purposes of rule 60 (b), the time period during which a motion for relief from judgment can be filed should be measured from the date of entry of the judgment nisi or the judgment absolute.

on which she attacks the judgment were available to her from the day the judgment was entered.[14] The only new ground that appears on the record is the plaintiff's hiring of new counsel. In these circumstances, the judge could properly conclude that the plaintiff's motion was not brought within a reasonable time.

3. *Conclusion*. The award of counsel fees to the plaintiff and the dismissal of the plaintiff's motion under rule 60 (b) and of the accompanying motions are affirmed. The inclusion of the cohabitation clause in the original judgment is beyond the scope of the the Probate Court's discretion and should be struck from the judgment. Because the provisions of art. III in the Gottsegen agreement did not survive, the judgment of dismissal of the plaintiff's complaint for contempt on factors unrelated to the financial circumstances of the parties is error. That judgment is therefore vacated and the case is remanded to the Probate Court for further proceedings consistent with this opinion.

*So ordered.*

HENNESSEY, C.J. (concurring). I concur, but I wish to emphasize that this case does not overrule the principles of *Bell* v. *Bell*, 393 Mass. 20 (1984). In *Bell*, we held that the parties were bound by the clear language of their separation agreement, which provided that alimony would cease if the wife cohabited with another man. *Id.* at 23. I have no doubt that, even in the absence of an agreement, the fact of such arrangement is an appropriate circumstance to be considered by the court in setting or modifying a support order. In this case, however, (1) under the terms of the agreement between the parties, the provision as to cohabitation did not survive the judgment of divorce, and (2) the judge found in substance that the wife's arrangement with another man did not affect her need for support. The

---

[14] Of course, either party is entitled to seek a modification of the judgment under G. L. c. 208, § 37, at any time that a material change of circumstances can be demonstrated.

judge thus relied on a condition which is irrelevant to the need for support under G. L. c. 208, § 34. The principles of *Bell* are not affected.


NOLAN, J. (dissenting). In part one of its opinion, the court has, in my view, completely ignored the intent of the parties — as expressed in their separation agreement, and elevated form over substance to sustain its holding. In doing so, the court has irredeemably overruled *Bell* without forthrightly admitting it. I dissent.

I agree with the premise that a court is to follow G. L. c. 208, § 34 (1984 ed.), in awarding alimony. I also agree that a judge may not order alimony terminated because of the cohabitation of a former spouse with a member of the opposite sex, without more. *Ante* at 625. However, neither issue controls this case. Here, two adults freely agreed that the husband's support obligations would be altered if his former wife cohabited with the same unrelated man with whom she was having a romantic relationship for more than two consecutive months. This condition occurred and the judge so found. Now, merely because a provision of the separation agreement was, at the request of the parties, merged into the judgment of divorce, the court erroneously holds that the provision is an unenforceable order of the court.

I am unpersuaded by the court's attempt to distinguish *Bell*. The attempt fails. The concurring opinion makes no improvement. The similarities between this case and *Bell* are too striking to be ignored. In *Bell* v. *Bell,* 393 Mass. 20 (1984), the disputed cohabitation clause provided for the termination of alimony upon the wife's living together with a member of the opposite sex "'so as to give the outward appearance of marriage.'" *Id.* at 21. The clause at issue in *Bell* was not conditioned on the wife's financial independence. Like *Bell,* the cohabitation clause in this case became effective upon the wife's living in concubinage with a member of the opposite sex; nor was the clause in this case conditioned on the wife's financial independence.

In *Bell,* the probate judge made specific findings and reported that the wife was in fact cohabiting with "J.R." The judge dismissed the complaint for contempt, thereby allowing enforcement of the agreement. As in *Bell,* the judge in this case made specific findings and reported that the wife was cohabiting with L.W. for a sufficient period of time to warrant enforcement of the agreement. In *Bell,* the parties incorporated the separation agreement into their divorce decree, thereby altering it from an ordinary contract to "a judicially sanctioned contract setting forth the allocation between former spouses of rights, responsibilities, and resources." *Bell* v. *Bell, supra* at 26 (Abrams, J., dissenting). Under the court's reasoning today, a probate judge would be permitted to enforce a cohabitation provision in a separation agreement that survived a judgment of divorce, as in *Bell,* but would be precluded from enforcing the *same* agreement made by the *same* two parties merely because the agreement merged into the judgment *at the request of the parties.* This result is plainly wrong. To the extent that a separation agreement was incorporated in the judgment of divorce in both cases, there is not a scintilla of material difference between this case and Bell.

Finally, the court *ante* at 624 n.8, suggests that in *Bell* the court affirmed the dismissal of a complaint for contempt brought by the former wife "on the ground that, under *the terms of an independent, surviving separation agreement, Bell* v. *Bell,* 16 Mass. App. Ct. 188, 190 (1983), she had 'liv[ed] together with a member of the opposite sex, so as to give the outward appearance of marriage.'" (emphasis supplied). It is worthy of note that the court in the instant case had to cite the opinion of the Appeals Court, which we reversed, in order to supply the phrase "under the terms of an independent, surviving separation agreement." The clear implication from the juxtaposition of the phrase "under the terms of an independent, surviving separation agreement" is that of cause and effect — that the complaint was dismissed *because* the agreement was independent and surviving. There is not the slightest suggestion in *this court's* opinion in *Bell* that the complaint was dismissed for this reason. In fact, the reader will search *this court's*

opinion in *Bell* in vain for any discussion or even mention of an "independent, surviving agreement." These terms ("independent" and "surviving") don't come into play until one spouse seeks to enforce the separation agreement *outside* the Probate Court, as for example, in a separate contract action. The court recently addressed this problem in *Ratchford* v. *Ratchford, ante* 114, 116 (1986). In short, reliance on *Bell* for the discussion in n. 8 about a surviving and independent contract is wholly misplaced.

A word in response to the concurring opinion is in order because it contains language which attempts to distinguish *Bell* but fails. This concurring opinion says that "under the terms of the agreement between the parties, the provision as to cohabitation did not survive the judgment of divorce." Is the opinion suggesting that the "merging" of the agreement in the judgment which the agreement calls for in art. V. 3 means that it ceases to be operative as a judgment? If so, it clearly is wrong. The cohabitation provision in the judgment in this case is as much entitled to enforcement as the cohabitation provision in the *Bell* judgment. It may be argued that, in *Bell,* the parties agreed that their agreement, incorporated into the judgment, remained alive, independent of the judgment. However, this argument is specious because the holding in *Bell* did not depend on the survival of the agreement. *Bell* was decided exclusively on the judgment, not on the agreement. The judgment controlled in *Bell* precisely as it controls in this case. In a word, there simply is no material difference between *Bell* and this case. Therefore, I dissent.