JEFFREY H. BENSON *vs.* DEBRA R. BENSON.

Essex. January 11, 1996. - May 17, 1996.

Present: LIACOS, C.J., ABRAMS, LYNCH, O'CONNOR, & FRIED, JJ.

*Divorce and Separation,* Child support, Child custody, Separation agreement, Modification of judgment, Alimony. *Contract,* Separation agreement.

In a divorce action, child support issues in a 1993 order were rendered moot by an amended temporary order entered by a probate judge in 1994 that suspended the child support obligations in question. [701-702]

In a divorce action, future consideration of child support issues are to be governed by G. L. c. 119A, § 1, as amended by St. 1993, c. 460, § 21, and G. L. c. 208, § 28, as amended by St. 1993, c. 460, § 61. [702-703]

In a divorce action, the probate judge properly terminated the payment of alimony to the wife on the basis of his independent examination of the wife's needs or on the basis of the parties' intention, as set forth in the marital separation agreement that survived as an independent contract, that alimony cease on the wife's cohabitation with a man for more than eight consecutive months, the situation that obtained. [703-705]

COMPLAINT for divorce filed in the Essex Division of the Probate and Family Court Department on April 17, 1984.

A complaint for modification, filed on January 14, 1987, was heard by *Edward J. Rockett,* J.

The Supreme Judicial Court granted an application for direct appellate review.

*Paul M. Kane* for the plaintiff.

*Sanford A. Kowal* for the defendant.

*George P. Lordan, Jr.,* for the interveners.

FRIED, J. Jeffrey H. Benson (father) and Debra R. Benson (mother) were divorced on July 13, 1984. By January 1, 1989, under the terms of the marital separation agreement, which was incorporated although not merged into the judgment of divorce, the father decreased his payments to the mother by 47.2%. The mother sought modification of the marital agreement to increase the child support payments. In 1993, the

Probate and Family Court, having made findings of fact and conclusions of law, increased the father's child support obligations and suspended his spousal support obligations. Both the father and mother appealed from this order, and we granted the mother's application for direct appellate review.[1]

## I

The Bensons were divorced on July 13, 1984. During their marriage, the Bensons had two children together. One was born in 1978 and the other in 1980. The marital separation agreement, effective May 1, 1984, and incorporated although not merged into the judgment of divorce, survived as an independent contract. The agreement provided that the husband pay alimony in the form of unallocated child and spousal support in the amount of $1,084 a month ($252.09 a week).[2] Under the terms of that agreement, such support would decrease, beginning January 1, 1989, to $867 a month ($201.63 a week). Such support would also decrease by a factor of 33 $1/3$% on the mother's cohabitation with a man for more than eight consecutive months. By January 1, 1990, due to the passage of time and the mother's cohabitation with another man for a period in excess of eight months, the father had reduced his payments to $133 a week. In a hearing before the Probate Court in 1993, the mother sought modification of the marital agreement to increase the child support payments.

In his findings of fact and conclusions of law, dated September 9, 1993, the Probate Court judge found that "all of the provisions [of the agreement] relating to [the mother and father] are legal, fair and reasonable and that the agreement was free of fraud or coercion." However, the probate judge further found that "the provisions relating to child support are unfair and unreasonable," that "[i]f counsel or a Guardian ad Litem were appointed to represent the interests of the minor children, then in [the probate judge's] opinion,

[1]The children, Bonnie and Heather Benson, have filed a separate brief as interveners.

[2]Although the agreement does not allocate the support obligation payments, the Probate Court judge found that "[u]nder Paragraph 3 of Exhibit C, the support obligation was to be reduced by a factor of 33 $1/3$ percent upon the remarriage of the [mother]. It therefore follows that 66 $2/3$ percent of the total support obligation was designated or intended to be for the benefit of the children (child support)."

such counsel or Guardian ad Litem would not have agreed to a reduction in the level of support for the minor children." "The minor children[, however,] were not represented in a hearing at the time of the divorce. They are not parties to [the] surviving [marital separation] agreement . . . and therefore should not be bound by the terms of said agreement." In his subsidiary findings, the probate judge stated:

> "[T]he parents of minor children do not possess the authority to contract away the rights of said children in a marital agreement that is incorporated but not merged into the divorce judgment and survived as an independent contract. . . .

> "[The mother] has proven something more than a material change in circumstances, warranting denial of specific enforcement of the agreement. . . .[3]

> "[M]inor children of divorcing parents should be represented by counsel or a Guardian ad Litem when said parties enter into [*sic*] surviving agreement that is essentially nonmodifiable. . . .

> "[The] minor children of the parties were denied due process of law and equal protection of the law at the time the marital agreement was executed and at the time the divorce was heard because they were not represented by counsel or a Guardian ad Litem. Subsequently said children were deprived of property (child support) under the terms of the agreement at the time the support order was reduced by 20% in 1989 and further reduced by 33 $1/3$% following their mother's cohabitation in 1990."[4]

The Probate Court judge then increased the father's child support obligations. With regard to the spousal support obligations, although the probate judge found "more than a

---

[3]The judge noted the children's increased need.

[4]In an addendum to his findings of fact and conclusions of law, the Probate Court judge added that "[t]he minor children of the parties are entitled to due process and equal protection of the law in accordance with the 14th Amendment to the United States Constitution and Articles I, X, XI and XII of the Massachusetts Declaration of Rights."

material change in circumstances" and noted this court's disapproval of alimony provisions that decrease on cohabitation, see *Gottsegen* v. *Gottsegen*, 397 Mass. 617, 625 (1986), quoting *Gayet* ·v. *Gayet*, 92 N.J. 149, 154 (1983) ("the extent of actual economic dependency, not one's conduct as a cohabitant, must determine the duration of support as well as its amount"), the probate judge also found that the mother "earns sufficient money, so that [the father] is not required to pay her alimony at the present time."

On May 12, 1994, the Probate Court judge issued a temporary order on the complaint for modification granting temporary, sole legal and physical custody of the minor children to the father and suspending the outstanding child support order until July 6, 1994, when the matter was to be reviewed. On July 6, 1994, the probate judge issued an amended temporary order dated "July 6, 1994 as of May 24, 1994." In the amended order, the only change which the probate judge made was to loosen the restrictions on the father's ability to remove the children from Massachusetts. The children's legal counsel informed this court, by letter dated January 5, 1996, that the father and his present wife (stepmother) have separated and that the children are living with the stepmother.

## II

The father asserts that due to the May 24, 1994, order, his present sole legal and physical custody of the children renders moot the child support issues of the September 9, 1993, order (1993 order).[5] We agree.[6]

Pursuant to the May, 1994, order, the father has custody of the children and his child support obligations have been suspended. The father argues that this makes the support issues moot. The mother counters that the support issues are not moot because "[t]he current custody arrangement is in place to help the mother overcome an alleged substance abuse

---

[5]The father also asserts (1) that the 1993 order improperly increased his child support obligations, and (2) that the 1994 order properly granted to the father sole legal and physical custody of the children and properly suspended the child support obligations.

[6]In denying the father's motion to dismiss the appeals as moot, a single justice of this court had ordered the parties "to address the issue of mootness in their briefs."

problem. The change in custody and suspension of the support order is temporary and not determinative."

Although the order may be only temporary, it does not provide for automatic termination. What it does provide is that "[t]his matter will be reviewed on July 6, 1994." Presumably the probate judge reviewed the matter on July 6, 1994, when the judge denied the mother's motion for temporary relief to regain custody of her children and the judge issued an amended temporary order dated July 6, 1994, as of May 24, 1994. Thus, the Probate Court must issue a new order to change these "temporary" arrangements. Therefore, because the amended temporary order continues to suspend the child support obligations and continues to grant the father sole legal and physical custody of the children, it renders the child support issues moot. As there remains a possibility that the mother will regain custody of the children, however, we briefly address this issue.

Although not in effect at the time of the judgment of divorce or the 1993 order, recent comprehensive legislation approved on January 13, 1994, and entitled "An Act to improve the economic security of the children of the commonwealth," amended, inter alia, G. L. c. 119A, § 1, by adding that "[i]t is hereby declared to be against the public policy of the commonwealth for a court of competent jurisdiction to enforce an agreement between parents if enforcement of the agreement prevents an adjustment or modification of a child support obligation when such adjustment or modification is required to ensure that the allocation of parental resources continues to be fair and reasonable and in the best interests of the child." St. 1993, c. 460, § 21. The legislation also amended G. L. c. 208, § 28, to provide that "[a] modification of child support may enter notwithstanding an agreement of the parents that has independent legal significance," and to require that support obligations for minor children be consistent with the child support guidelines promulgated by the Chief Justice for Administration and Management. St. 1993, c. 460, § 61.[7]

Although this legislation was not in effect at either the time

---

[7]General Laws c. 208, § 28 (1994 ed.), provides in part that: "Upon a complaint after a divorce . . . the court may make a judgment modifying its earlier judgment as to the care and custody of the minor children of the parties provided that the court finds that a material and substantial change

of the divorce or the 1993 modification order, the act and the public policy underlying the legislation would be applicable to the present situation. See *McCarthy* v. *McCarthy*, 36 Mass. App. Ct. 490, 493 & n.5 (1994) (divorce and separation agreement entered into in 1987). Accordingly, should there be a time when the father's support obligations again become an issue, the fairness of the support provision in the separation agreement would have to be judged by the criteria of the legislation which took effect in 1994. As for the argument that children are constitutionally entitled to counsel or a guardian ad litem at every proceeding in which their support is an issue, we note that the new legislation does not address this question and we decline to consider it at this time.

The remaining issue in the instant case is whether the finding of the Probate Court judge that "the mother earns sufficient money so that the [father] is not required to pay her alimony at the present time" is, as the mother complains, "unlawful and unconstitutional." The mother argues that whatever payments the Probate Court determines that the father must make with regard to the increased support needs of his children, the agreement itself should remain as an independently enforceable contract between the father and mother which "provides money by the father to the mother as unallocated support." The provision provides that "[u]pon the remarriage of the Wife the Husband's monthly support obligation to the Wife and children . . . shall be reduced by a factor of Thirty-three and One-third ($33^1/3\%$) percent." The mother argues that:

> "There is . . . no enforcement provision in the agreement which tells the mother how to spend these funds, nor is it the practice to do so in Massachusetts. Therefore in essence, it is an enforceable contract for the payment of money between the father and the mother without any relationship to the children."

in the circumstances of the parties has occurred and the judgment of modification is necessary in the best interests of the children. In furtherance of the public policy that dependent children shall be maintained as completely as possible from the resources of their parents . . . orders of maintenance and support of minor children shall be modified if there is an inconsistency between the amount of the existing order and the amount that would result from application of the child support guidelines . . . ." The last sentence was inserted by St. 1993, c. 460, § 61.

The logical conclusion of this argument is that the mother should continue to receive payments from the father, which she may spend as she wishes, and if the needs of the children are not met, then the father's support payments for the children should increase. This argument assumes, as the mother states, that "the parties themselves have settled alimony payments in the agreement, regardless of need of either the father or the mother." The probate judge properly found, however, that the parties intended that the agreement provide separately for the children and for the mother.[8] Furthermore, the probate judge properly examined the intent of the parties and allocated the unallocated amounts which the agreement obligated the father to pay the mother, concluding that the agreement contemplated eliminating payments for the mother's support in the event of her cohabitation. The question that remains, therefore, is whether the probate judge properly terminated the mother's one-third allocation altogether or whether the mother should have continued to receive her one-third allocation.

As the probate judge correctly noted, this court has expressed its disapproval of alimony provisions that decrease on cohabitation, see *Gottsegen* v. *Gottsegen*, 397 Mass. 617, 625 (1986). The court in *Gottsegen*, however, limited its holding to cases in which such alimony provisions merged in the divorce judgment and did not extend it to cases such as this where the provision survived the judgment. *Id*. at 629-630 (Hennessey, C.J., concurring). *Id*. at 631 (Nolan, J., dissenting). Here the mother seeks to have it both ways. She seeks to repudiate the agreement in respect to both the cohabitation clause and to its evident intent to give separate consideration to her and her children's support. At the same time, she disagrees with the probate judge's independent evaluation of her needs because she does not like his conclusion. The probate judge found that the mother "earns sufficient money, so that [the father] is not required to pay her alimony at the present time." Accordingly, the probate judge properly suspended the spousal support payments whether by looking

[8]According to the father, such arrangement was expressed in unallocated form so as to procure the benefit of a full measure of tax deductibility under the Internal Revenue Code as it existed prior to the changes in 1986.

to the intent of the parties or by virtue of his own independent examination of the mother's needs as mandated by the *Gottsegen* case.

The judgment of the Probate and Family Court is affirmed.

*So ordered.*